**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**NORITA WILLIAMS,**

**Plaintiff,**

**v.**

**VIACOMCBS, INC., and KENNETH MOLDOVAN,**

**Defendants.**

**CIVIL ACTION FILE**

**NO. 1:21-CV-4036-MHC**

# ORDER

This case comes before the Court on Defendants ViacomCBS, Inc. ("Viacom")'s Supplemented and Refiled Motion for Summary Judgment and Defendant Kenneth Moldovan ("Moldovan")'s Supplemented and Refiled Motion for Partial Summary Judgment ("Defs.' Mots.") [Doc. 108] and Defendants' Motion for Physical/Mental Examination by Physician ("Defs.' Mot. for Exam") [Doc. 117].

# I. BACKGROUND[1]

## A. Factual Background

On January 13, 2020, Moldovan was driving a rented 2019 Ford F150 provided to him by his employer, Viacom, as part of a negotiated work package, under which Viacom also paid the auto insurance. Defs.' SMF ¶¶ 3-4, 6; Tr. Dep. of Kenneth Moldovan (Mar. 31, 2022) [Doc. 87-3] at 7. According to the Georgia Motor Vehicle Crash Report [Doc. 108-8], Moldovan "lost control [while he was] changing lanes into the second lane[,] striking" Plaintiff's 2011 Toyota Highlander on the driver's side. Id. at 1-2. Moldovan was cited for failing to maintain his lane. Id. at 2.

At the time of the accident, Moldovan was a construction foreman on the set of the fourth season of the television show *MacGyver*, where he worked in the

[1] At the outset, the Court notes that, as this case is before it on Defendants' Motion for Partial Summary Judgment, the Court views the evidence presented by the parties in the light most favorable to Plaintiff Norita Williams and has drawn all justifiable inferences in her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Rsch., Inc., 711 F.3d 1264, 1270 (11th Cir. 2013). The Court has excluded assertions of facts that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number). LR 56.1B(1), NDGa. Further, the Court accepts as admitted those facts in Defendants' Statement of Material Facts as to Which There is no Genuine Issue to be Tried ("Defs.' SMF") [Doc. 108-1] that have not been specifically controverted with citation to the relevant portions of the record. See LR 56.1B(2), NDGa.

same role on all of the previous seasons. Defs.' SMF ¶¶ 1-2. At the time of the incident, Moldovan was not transporting any equipment for Viacom and was only driving himself to work "from his home in Madison, Georgia to his worksite for *MacGyver* in Atlanta." Id. ¶¶ 6-7.

Viacom "expected" Moldovan to commute to work in his personal vehicle, and only use the 2019 Ford F150 during "work hours." Id. ¶ 8. Otherwise, Viacom "expected" Moldovan to leave the work vehicle in a designated lot when not using it for work purposes, such as transporting materials and employees between locations. Id. ¶¶ 8-10. Viacom provided no training to Moldovan related to his use of the 2019 Ford F150. See id. ¶ 5 (noting that the only training taken by Moldovan was related to construction issues).

Based on the foregoing, Plaintiff filed her Complaint alleging the following causes of action: (1) negligence against Moldovan (Count I); (2) imputable liability against Viacom (Count II); (3) negligent hiring, training and supervision against Viacom (Count III); (4) punitive damages under O.C.G.A. § 51-12-5.1 and attorney's fees under O.C.G.A. § 13-6-1 (Count IV); and (5) compensatory damages (Count V). Compl. ¶¶ 14-56.

### B. Procedural Background

On September 29, 2021, Plaintiff filed the above-styled personal injury

action against Viacom and Moldovan. Compl. for Damages ("Compl.") [Doc. 1] ¶¶ 7-10. On June 2, 2023, Defendants Viacom and Moldovan filed their original motion for summary judgment [Doc. 87] and motion for partial summary judgment [Doc. 91], respectively. On August 10, 2023, the Court granted the parties' consent motion to stay the case pending mediation and ordered that discovery be stayed until 30 days after the date set for mediation. Aug. 10, 2023, Order [Doc. 99]. Mediation having failed, Defendants refiled and supplemented their original motions for summary judgment, which are now before the Court. As will be recounted below in further detail, the parties also have been embroiled in a discovery dispute related to certain medical records from Plaintiff's treating physician, Dr. Eugene Emory, who has failed to comply with the Court's December 7, 2013, Order, compelling production of documents. See Dec. 7, 2013, Order [Doc. 113].

### C. Plaintiff's Response to Defendants' Statement of Material Facts

In support of their Motion for Summary Judgment, Defendants submitted a Statement of Material Facts as to Which There is No Genuine Issue to be Tried [Doc. 108-1]. Plaintiff failed to file a response to Defendants' Statement of Material Facts as required by Local Rule 56.1B(2)(a)(1). Although Plaintiff appears to include in his opposition brief partial responses to Nos. 8 through 10 of

Defendants' Statement of Material Facts, see Pl.'s Opp'n to Defs.' Mot. for Partial Summ. J. ("Pl.'s Opp'n") [Doc. 112] at 3-5, these responses fail to comply with the Local Rules on multiple grounds.

First, Plaintiff's submission fails to follow the local rule which requires a separate document to be included in conjunction with the response brief. See LR 56.1B(2), NDGa. (providing that "[a] response to a summary judgment motion shall include the following documents with the response brief: . . . a response to the movant's statement of undisputed facts," which "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed facts.").

Second, even if this Court considered the partial response to Defendants' Statement of Material Facts contained in Plaintiff's opposition brief, these responses do not refute Defendants' asserted facts. See Pl.'s Opp'n at 4-5, ¶¶ 1-3. Instead of citing to evidence which directly contradicts the evidence proffered by Defendants, Plaintiff relies on the absence of any record evidence indicating that there was an official policy prohibiting the use of rental vehicles for personal use or that Viacom employees were aware of any such policy. Id. This does not constitute the refutation of the stated facts "with concise responses supported by specific citations to evidence." LR 56.1B(2)(a)(2). Because Plaintiff failed to

properly respond to Defendants' Statement of Material Facts, those facts are deemed admitted insofar as they are supported by record evidence and do not state legal conclusions. See LR 56.1B(1), (2)(a), NDGa.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence demonstrating a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 324. In

determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. Anderson, 477 U.S. at 255; see also Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. Anderson, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Id. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita, 475 U.S. at 587.

**B. Discussion**

Viacom seeks summary judgment as to Plaintiff's claims for imputable liability, negligent hiring, training, and supervision, punitive damages, and attorney's fees (Counts II-IV) and Moldovan seeks summary judgment as to Plaintiff's claims for punitive damages and attorney's fees (Count IV). Defs.' Br. in Supp. of Mot. for Partial Summ. J. ("Defs.' Br.") [Doc. 108-2] at 5-19.

### 1. Imputable Liability (Count II)

Viacom argues that it cannot be held responsible for Moldovan's actions because the accident occurred outside the scope of his employment. Id. at 6. Viacom further argues that Moldovan's use of the vehicle was outside the permitted uses anticipated by Viacom because Moldovan had not begun working and Moldovan was commuting to work from home. Id.

"The clearest case of vicarious liability [that is, liability for the tort of another] is that of a master for harm caused by acts of his servant." Chorey, Taylor & Feil, P.C. v. Clark, 273 Ga. 143, 144 (2000) (quoting Harper, James & Gray, The Law of Torts, § 26.6, p. 23 (2d ed. 1986)). Under the principle of respondeat superior,

> an employer responsible for the conduct of its employee if the employee acted in the course of the employer's business and with a desire to benefit the employer. By contrast, when an employee undertakes an act purely personal in nature, no respondeat superior liability may be imposed. The question of whether a given act falls within the scope of employment is highly fact-specific, and turns on the unique circumstances of the case at bar.

Bennett v. United States, 102 F.3d 486, 489 (11th Cir. 1996) (citations omitted); see also Quynn v. Hulsey, 310 Ga. 473, 474 n.2 (2020) ("Under the doctrine of respondeat superior, '[w]hen a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the

injury acting within the scope of his employment and on the business of the master.'") (citation and quotation omitted).

The Supreme Court of Georgia recently restated the general rule that respondeat superior does not apply when an employee commits a tort while commuting because she "'acts only for her own purposes'—and not for those of her employer—while she is going to or from work." Prodigies Child Care Mgmt., LLC v. Cotton, 317 Ga. 371, 378 (2023) (quoting Chattanooga Publ'g Co. v. Fulton, 215 Ga. 880, 882 (1960)).

> [A]s a matter of law, an employee generally does not act in furtherance of her employer's business and within the scope of her employment while she travels to or from her workplace. Thus, when an employee causes a car accident while driving to or from work, respondeat superior generally does not apply, absent some showing that the employee was otherwise acting in furtherance of her employer's business and within the scope of her employment.

Id.; see also Dougherty Equip. Co., Inc. v. Roper, 327 Ga. App. 434, 437 (2014) (holding that "an employee is deemed to act only for his own purposes while commuting to work," and that "arriving at work on time" was not in furtherance of an employer's business but rather the employee's own interests).

Plaintiff acknowledges that, generally, when an employee is commuting to work, the employee is not acting in the course and scope of employment or furthering the employer's business. Pl.'s Opp'n at 7. Nevertheless, Plaintiff

makes the following arguments in support of her position that there is a question of fact precluding summary judgment on her vicarious liability claim in Count II: (1) the fact that Viacom provided Moldovan with the automobile used when he caused the accident creates a presumption that Moldovan was acting within the scope of his employment, (2) the "special circumstances" of this case support a finding that Moldovan was acting within the scope of his employment despite the undisputed fact that the accident occurred during his commute to work, (3) Viacom ratified Moldovan's use of the vehicle in such a way that Viacom assumed liability for any unauthorized action by him, and (4) there is sufficient evidence to demonstrate that Moldovan was acting within the scope of his employment at the time of the accident. Pl.'s Opp'n at 6-12.

**a. The undisputed record evidence that Moldovan was commuting to work and not acting within the scope of his employment at the time of the accident overcomes any presumption created by the fact that Viacom paid for the vehicle.**

Plaintiff argues that "when an employee is driving a vehicle provided by their employer there is a presumption that the employee is acting within the scope of their employment" and "the burden then is on the employer to prove otherwise" with additional evidence. Id. at 6-7.

> It is true that "[w]here a tort occurs as a result of a vehicle collision in which the employee was driving his employer's vehicle, however, the

> employer's liability must be analyzed under the burden-shifting framework espoused by the Supreme Court of Georgia in Allen Kane's Major Dodge, Inc. v. Barnes, 243 Ga. 776 (1979). Under this framework, a presumption arises that the employee was acting in the course and scope of his employment at the time of the collision, and the burden is then on the employer to show otherwise. An employer may overcome this presumption as a matter of law by presenting uncontradicted evidence showing that the employee was not acting in the course and scope of his employment."

Hobbs through Eagle v. Integrated Fire Prot., Inc., 357 Ga. App. 790, 793 (2020) (quoting Dougherty, 327 Ga. App. at 436). In Hobbs, the court found the evidence that the employee was not working, but had just left a bar after socializing with friends at the time of the accident, was "sufficient to rebut the presumption that [the employee] was acting within the scope of his employment at the time of the accident." Id.

Similarly, it is undisputed in this case that Moldovan was not working, but was commuting to work at the time of the accident. Defs.' SMF ¶¶ 6-7. This undisputed evidence is sufficient to overcome any presumption that Moldovan was acting within the scope of his employment at the time of the accident by virtue of the fact that his automobile was paid for by Viacom. See Dougherty, 327 Ga. App. at 437 (holding that the "uncontradicted evidence" that the employee was commuting to work and "had not yet begun work at the time of the accident" was

sufficient to rebut the presumption that he "was acting in the course and scope of his employment.").

**b. Georgia courts no longer recognize the special circumstances exception as a theory of vicarious liability.**

Acknowledging that the "general rule" is that an employee is engaged in a personal matter while commuting to work, Plaintiff argues that an exception applies when "special circumstances" exist, such as the presence of an employer's material in the employee's vehicle, the existence of a vehicle stipend, whether the employee had a work phone during the commute, and whether the employee was on call. Pl.'s Opp'n at 7-8 (citing Wade v. Ga. Diversified Indus., Inc., 240 Ga. App. 225, 226-27 (1999)). Plaintiff argues that, because Viacom rented the vehicle, provided a vehicle stipend and insurance coverage, and required Moldovan to be "on call," a question of fact exists regarding whether Viacom should be held vicariously liable. Id.

In Prodigies, the Supreme Court of Georgia disapproved of the so-called "special circumstances" exception to the doctrine of respondeat superior liability, noting that the exception and concomitant analysis "is an unwarranted restriction on the totality-of-the-circumstances evaluation inherent to an analysis of respondeat superior, including because it improperly limits the ways in which a

plaintiff can prove the ultimate question of respondeat superior." Prodigies, 317 Ga. at 383. The Court held that "there is no need—and it is not proper—to apply a separate test to determine whether the acts in question are so-called 'special circumstances.'" Id. Instead, after Prodigies, "[t]he proper test is the traditional respondeat-superior test: whether the employee was acting in furtherance of her employer's business and within the scope of her employment at the time she committed the tortious act." Id. Accordingly, Plaintiff's argument that the facts of this case present "special circumstances" constituting an exception to the general rule that an employee who is commuting to work is not engaged within the scope of employment fails as a matter of law.

**c. Plaintiff's argument that Viacom ratified Moldovan's unauthorized use of the vehicle fails because it is undisputed that Moldovan's use of the rental vehicle in his commute to work was not within the scope of his employment.**

Plaintiff argues that Viacom allowed Moldovan to leave the work site in the rental vehicle at issue "almost daily without supervision or disciplinary action" and "[t]his lack of supervision, formal written rules, or disciplinary action constituted ratification or failure to repudiate his actions making [Viacom] bound to liability." Pl.'s Opp'n at 10.

> An employer may ratify tortious conduct by an employee, and thereby assume liability for unauthorized conduct, but for liability to be

> imposed on the employer by ratification, there must be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of the employment. . . . [T]he long-established rule is that, where an employee was acting solely for himself[,] there is no such thing as a master assuming, by ratification, liability for an act of another in which the master had no part. An act can not be subject to ratification unless done in behalf of the person adopting it and attempting to ratify it. Thus, where an employee is acting exclusively for himself and is not acting at all for the employer, and does not profess to be acting for the employer, there is no such thing as a master assuming by ratification liability for the personal act of his employee.

Travis Pruitt & Associates, P.C. v. Hooper, 277 Ga. App. 1, 3-4 (2005) (internal punctuation and citation omitted).

Similar to Plaintiff's argument in this case, the plaintiff in Hobbs argued that the employer's failure to discipline or repudiate its employee for using a company vehicle for personal reasons was an implicit ratification of that behavior, which should result in vicarious liability. Hobbs, 357 Ga. App. at 797-98. The Hobbs court rejected this argument and granted summary judgment for the employer because there was no evidence in that case that the employee was acting in furtherance of any business connected to the employer at the time of the accident. Id. Similarly, the undisputed evidence in this case is that Moldovan was commuting to work at the time of the accident, an act which was for his own personal business, not that of Viacom. It is immaterial that there is no record evidence that Viacom has any written rules prohibiting Moldovan's use of the

rental car to commute to work. See Pl.'s Opp'n at 8-10. Accordingly, based on the undisputed evidence in this case (and the absence of any evidence to indicate that Moldovan was acting in furtherance of any business connected to Viacom), Viacom cannot be found to have ratified Moldovan's actions.

**d. The evidence viewed in a light most favorable to Plaintiff does not create a genuine issue of material fact that Moldovan was acting within the course and scope of his employment at the time of the accident.**

Plaintiff repeats the argument that there is evidence of "special circumstances" that create a jury question regarding the scope of Moldovan's employment. Id. at 10-12. Specifically, Plaintiff argues that the facts that (1) Moldovan received a stipend for the rental car at issue and (2) he was considered on "on call" employee create a jury question as to whether Moldovan was acting within the scope of his employment at the time of the accident. Id. This Court disagrees.

This precise issue was addressed in Dougherty, resulting in the grant of summary judgment for the employer:

> While the evidence shows that Garland was an "on call" technician, an employee's "on call" status is, at best, circumstantial evidence that Garland was acting in the scope of employment and, therefore, insufficient to defeat Dougherty's motion for summary judgment. To show that Garland was acting in the scope of his employment, there must be evidence that he had, in fact, been called to duty and was acting pursuant to that duty at the time of the accident.

> Moreover, the trial court correctly concluded that Garland was driving the van to fulfill his duty of arriving at work on time, and no evidence showed that Garland was undertaking a duty at Dougherty's direction at the time of the accident. In the absence of such evidence, Dougherty could not be held vicariously liable for Garland's torts.

Dougherty, 327 Ga. App. at 437. Similarly, the undisputed evidence in this case is that Moldovan was commuting to work at the time of the accident and, although he was characterized as an "on call" employee by Plaintiff, there is no evidence that he was on call, or otherwise acting in furtherance of Viacom's interest, at the time of the accident. Accordingly, based on the absence of any evidence that Moldovan was acting in furtherance of Viacom's business at the time of the accident, Defendants are entitled to summary judgment on the vicarious liability claim. As such, Defendant Viacom's Motion for Summary Judgment as to vicarious liability (Count II) is **GRANTED**.

### 2. Negligent Hiring, Training, and Supervision (Count III)

Viacom argues that Plaintiff's negligent hiring, training, and supervision claim fails because Moldovan was not acting within the scope of employment for Viacom at the time of the accident. Defs.' Br. at 11-12. Plaintiff's argument to the contrary is limited to an argument that this Court rejected above: "[i]f it is proven that Mr. Moldovan was acting in the course and scope of his employment because

of the special circumstances' exception and/or the ratification of his actions; there is a valid claim of negligent hiring, training, and supervision." Pl.'s Opp'n at 12.

"[C]laims for negligent hiring, training, supervision, and retention are based on the alleged negligent acts of the employer." Quynn v. Hulsey, 310 Ga. 473, 477 (2020) (citations omitted). Based on the undisputed evidence that Moldovan merely was commuting and not acting within the scope of his employment at the time of the accident precludes any negligent hiring, supervision, or training claim against Viacom. Dougherty, 327 Ga. App. at 438 (granting summary judgment on a negligent hiring claim where the evidence demonstrated that the employee was not acting in the scope of employment at the time of the accident); see also Video Warehouse, Inc. v. S. Tr. Ins. Co., 297 Ga. App. 788, 790 (2009) (granting summary judgment on the negligent hiring and retention claim, holding that "the accident could not have occurred while the employee was simply commuting to work but had to occur while the employee was engaged in [the employer]'s business."); McLaine v. McLeod, 291 Ga. App. 335, 336 n. 3 (2008) (noting that there could be no negligent hiring claim where the defendant was not acting within the scope of employment at time of the accident).

Therefore, Viacom's Motion for Summary Judgment as to Count III is **GRANTED**.

### 3. Attorney's Fees and Punitive Damages (Count IV)

Because Plaintiff's state law claims for vicarious liability and negligent hiring, training, and supervision against Viacom fail, the remaining claims for attorneys' fees and punitive damages against Viacom pursuant to O.C.G.A. §§ 13-6-11 and 15-12-5.1 are not supported by any underlying state law claim. See AAF-McQuay, Inc. v. Willis, 308 Ga. App. 203, 216 (2011) ("[A] prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim.") (quoting United Cos. Lending Corp. v. Peacock, 267 Ga. 145, 147 (1996)); Perkins v. Thrasher, 701 F. App'x 887, 891 (11th Cir. 2017) ("[The plaintiff's] Georgia state law claims for punitive damages under O.C.G.A § 51-12-5.1 and attorney's fees under O.C.G.A. § 13-6-11 are derivative of Georgia tort law claims and thus require an underlying claim.").

As to Moldovan, Defendants argue that no claim for punitive damages or attorney's fees are possible because there is no evidence of malice or willful conduct, there is a bona fide controversy in this case, and there is an absence of stubborn litigiousness and/or bad faith. Defs.' Br. at 14-19. In her Complaint, Plaintiff's claims for both punitive damages and attorney's fees are based solely on the alleged conduct of Viacom. See Compl. ¶¶ 43-44, 46. Moreover, Plaintiff's response to Defendants' Motion for Summary Judgment fails to provide any substantive

argument to support the recovery of punitive damages or attorney's fees from Moldovan. See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). Because Plaintiff has failed to respond to Moldovan's Motion for Summary Judgment as to Count IV of the Complaint against him, the Court treats the claim as abandoned. "When a plaintiff brings a claim in her complaint but later fails to respond to a motion seeking summary judgment against her on that claim, the plaintiff is deemed to have abandoned the claim." Jones v. Ethicon, Inc., No. 4:21-CV-23, 2021 WL 1199028, at *7 (S.D. Ga. Mar. 30, 2021) (citations omitted); see also Ahuja v. Cumberland Mall, LLC, 821 F. Supp. 2d 1317, 1327 (N.D. Ga. 2011) (treating attorney's fees and punitive damages claims as abandoned when the plaintiff failed to address the claims in her response); Clark v. City of Atlanta, 544 F. App'x 848, 855 (11th Cir. 2013) ("The district court, therefore, properly treated as abandoned the [plaintiffs'] excessive force and state law claims, which were alleged in the complaint, but not addressed in opposition to the motion for summary judgment.").

Accordingly, Viacom's Motion for Summary Judgment and Moldovan's Motion for Partial Summary Judgment as to Plaintiff's claim for punitive damages and attorney's fees is **GRANTED.**[2]

## III. DEFENDANTS' MOTION FOR MEDICAL EXAMINATION

### A. Legal Standard

Federal Rule of Civil Procedure 35(a) permits the Court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). The rule further provides that the order (1) "may be made only on motion for good cause and on notice to all parties and the person to be examined," and (2) "must specify the time, place, manner, conditions, and scope of the examination, as well as the person[] who will perform it." FED. R. CIV. P. 35(a)(2)(A)-(B). The "good cause" standard is met where a plaintiff "asserts mental or physical injury" and places it "clearly in controversy[.]" Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964). If an examination is ordered, "[t]he ultimate determination with respect to the proposed parameters of the exam is left entirely

---

[2] In addition, because all substantive claims against Viacom have been dismissed, there are no longer any such claims to support an award of damages against Viacom as pleaded in Count V of the Complaint.

to the Court's sound discretion." Woodard v. Wal-Mart Stores East, LP, No. 5:09-CV-428 CAR, 2010 WL 3455342, at *2 (M.D. Ga. Aug. 26, 2010).

> "Even with the availability of a plaintiffs [sic] medical records, a defendant generally deserves 'the benefit of an examination by a physician whose judgment [the defendant's] counsel knows and respects.'" Jackson v. Deen, No. CV412-139, 2013 WL 2027398, at *5 (S.D. Ga. Apr. 3, 2013) (quoting Woodard, 2010 WL 3455342, at *2 (M.D. Ga. Aug. 26, 2010) (internal citations omitted)); Castle-Foster v. Cintas Corp. No. 2, No. CV419-139, 2021 WL 601877 (S.D. Ga. Feb. 16, 2021). The IME [Independent Medical Exam] process also eliminates the need for a defendant to provide evidence at cross-examination as "[u]se of their own expert testimony is a 'well-recognized and reasonable way of . . . challenging a plaintiff's claim and testimony, and an examination by that expert is necessary to form a meaningful opinion.'" Massey v. Wal-Mart Stores East, LP, 5:12-CV-204 (MTT)., 2013 WL 396286, at * 1 (M.D. Ga. Jan. 31, 2013) (quoting Bethel v. Dixie Homecrafters, Inc., 192 F.R.D. 320, 322 (N.D. Ga. 2000) (internal citations omitted))[(alterations accepted)].

Joy v. Wal-Mart Stores E., LP., No. 1:20-CV-04309-WMR, 2021 WL 2562254, at *1 (N.D. Ga. Apr. 2, 2021). "Rule 35(a) is to be construed liberally in favor of granting the examination." Postell v. Amana Refrigeration, Inc., 87 F.R.D. 706, 707 (N.D. Ga. 1980) (citing 4A MOORE'S FEDERAL PRACTICE ¶ 35.04); see also Schlagenhauf v. Holder, 379 U.S. 104, 114 (1964) (holding that Rule 35 is to be accorded "broad and liberal treatment.").

### B. Discussion

Plaintiff received treatment from non-party Eugene K. Emory, Ph.D, at the Institute for Psychological Development, where she had a neuropsychological

evaluation completed. Despite intervention from the Court, see Dec. 7, 2023, Order [Doc. 113] (ordering Dr. Emory to "produce the documents requested by Defendants' counsel in their February 9, 2022, subpoena to produce documents, including the raw data from the neuropsychological evaluation of Plaintiff"), Defendants represent that Dr. Emory has failed to provide them with "handwritten notes pertaining to the interview, behavioral observations and mental status examination, as well as Pearson reports for the MMPI as well as other tests and subtests[.]" Mot. for Exam at 4.[3]

Because Defendants' expert, Dr. Thomas G. Burns, requested this information, and because this information was not provided (even after an Order from this Court), Defendants seek an opportunity for Dr. Burns to examine Plaintiff's mental and physical injuries firsthand under Rule 35 of the Federal Rules of Civil Procedure. Defs.' Mot. for Exam at 6. More specifically, Defendants argue that a medical examination is warranted in this case because (1) Plaintiff has placed her mental and physical injuries in controversy; (2) Dr.

---

[3] The Subpoena [Doc. 117-3 at 9-18] specifies that "[t]he materials include without limitation, correspondence, memoranda, stenographic and handwritten notes, studies, publications, books, pamphlets, voice recordings, reports, minutes, electronic mails, electronic files, memoranda of agreement, diaries, calendars, invoices, bills, summaries, and medical records." Id. at 13.

Emory's failure to provide the complete testing information and Plaintiff's history of similar injuries necessitates that Defendants' own expert conduct a similar examination to allow Defendants and Plaintiff to be on the same playing field as to damages; (3) Dr. Burns is qualified to perform the testing; and (4) the testing is limited to "investigating the cause, nature, and extent of Plaintiff's alleged injuries in this lawsuit and to ascertain Plaintiff's current physical and mental condition, as well as relevant medical history. Defs.' Mot. for Exam at 6-11. Defendants represent that the proposed "examination with Dr. Burns will be akin to the neuropsychological evaluation that Plaintiff already underwent with her own provider, Dr. Emory." Id. at 8-11. Plaintiff opposes this motion on three separate grounds: (1) Defendants have failed to show good cause, (2) Defendants have failed to establish that Dr. Burns is a proper expert to examine Plaintiff in the field of neuropsychology, and (3) that Defendants' descriptions of the scope of the examination are too broad under Rule 35. Pl.'s Resp. to Defs.' Mot. for Exam [Doc. 120].

**1. Good Cause**

"Plaintiff concedes she has placed in controversy her physical and mental condition. Therefore, the Defendant need only show good cause." Causey v. Sam's E., Inc., No. 5:12-CV-250 MTT, 2013 WL 395986, at *2 (M.D. Ga. Jan. 31,

2013). In Causey, the Court stated that when a plaintiff intends to prove her claim through expert testimony, "'the need to preserve the equal footing of the parties to evaluate the plaintiff's physical state' may provide the [] defendant 'good cause' to seek examination by its own doctor." Id. (quoting Bethel v. Dixie Homecrafters, Inc., 192 F.R.D 320, 322 (N.D. Ga. 2000)).

> Here, the Defendant has shown good cause to order the Plaintiff to submit to physical and mental examination by its experts. The Plaintiff through her expert physicians has developed an opinion as to the cause and nature of her injuries, and she is relying on that opinion to help prove her claim. The Defendant is entitled to equal footing when determining its own theories on these matters. Limiting the Defendant to a review of the Plaintiff's medical records and depositions of her experts would not allow the Defendant to fully assess and present to a jury the nature and cause of the Plaintiff's injuries. This makes the Defendant's requested examinations more than merely cumulative or duplicative of previously disclosed records, as the Plaintiff contends. The most equitable resolution to this matter is to require the Plaintiff to, under reasonable conditions, submit to physical and mental examination by the Defendant's experts.

Causey, 2013 WL 395986, at *2.

Plaintiff argues that Dr. Emory has provided all the information that Defendants seek, so there can be no good cause for an examination. Pl.'s Resp. to Defs.' Mot. for Exam at 4-5. Plaintiff provides no factual support for the contention that Dr. Emory provided all of the requested information. Moreover, even if Dr. Emory had produced the requested information, Plaintiff concedes that Dr. Emory had the opportunity to examine Plaintiff personally, but takes that

position that Dr. Burns should be limited to reviewing the medical records and information he received. Assuming Dr. Burns received the requested information, which Defendants vigorously contest, Defendants' expert is still at a disadvantage.[4]

> [When a plaintiff's] physicians have personally met with the Plaintiff and have physically examined Plaintiff . . . Defendant would be unduly prejudiced in defending this matter if it were not allowed to have a doctor of it's choosing meet with and conduct a clinical examination of the Plaintiff in order to fully explore the issue of medical causation, and to evaluate Plaintiff's present condition and prognosis. Limiting the Defendant to a mere review of the Plaintiff's medical records would not allow the Defendant to fully assess and present to a jury the nature and cause of the Plaintiff's injuries.

Conley v. Wal-Mart Stores E., LP., No. 1:20-CV-04340-WMR, 2021 WL 9772844, at *2 (N.D. Ga. July 14, 2021).

Plaintiff seeks to use Dr. Emory as an expert to demonstrate that her damages are significant and that she suffered a traumatic brain injury. Defendants are thereby entitled to be on the same footing and utilize their own expert to evaluate Plaintiff in a similar manner. As such, good cause for the medical examination of Plaintiff exists.

[4] Additionally, Dr. Burns's review of documents is limited to the allegedly deficient information that Dr. Emory turned over, which Defendants contend is not comprehensive of the information requested by their subpoena and which this Court ordered Dr. Emory to provide. This constitutes a further disadvantage.

### 2. The Propriety of Dr. Burns as the Examination Neuropsychologist

> The courts usually honor the examining party's choice of an examiner. Great West Life Assurance Co. v. Levithan, 153 F.R.D. 74, 76 (E.D. Pa. 1994) (defendant in disability insurance dispute entitled to choice of physician to examine plaintiff); Powell v. United States, 149 F.R.D. 122, 123-124 (E.D. Va. 1993) (defendant entitled to choice of physician to examine plaintiff in personal injury action despite physician's testimony that two out of three persons examined by him at request of insurance companies exaggerated their symptoms); Looney v. National R.R. Passenger Corp., 142 F.R.D. 264, 265 (D. Mass. 1992) (personal injury defendant entitled to choice of physician to examine plaintiff despite allegation that physician was biased); Olcott v. LaFiandra, 793 F. Supp. 487, 492 (D. Vt. 1992) (due to plaintiff's retention of a vocational rehabilitation expert to testify regarding plaintiff's recovery from stroke, defendants would have been prejudiced if they could not have their own expert examine plaintiff). Alleged bias on the part of the proposed examiner is not a reason for rejecting the party's choice. Looney, 142 F.R.D. at 265.

Joy, 2021 WL 2562254, at *1.

Plaintiff argues, without support, that Dr. Burns is only qualified as an expert in psychology and, therefore, is not a suitable examiner for a neuropsychological examination. Pl.'s Resp. to Defs.' Mot. for Exam at 5-6. This bare assertion is contradicted by Dr. Burns' Curriculum Vitae [Doc. 117-9], which lists him as board certified in Neuropsychology. Nonetheless, if Plaintiff remains unconvinced that Dr. Burns is not a suitable expert, Plaintiff is free to argue at a later stage that Dr. Burns's examination results or testimony should not be tendered at trial. But there is no current basis to disqualify Defendants' choice of examiner

given that he is board certified in the field of examination. The Court finds that Defendant's proposed examiner, Dr. Burns, is a "suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1).

### 3. The Scope of the Exam

Plaintiff argues that Defendants failed to specify the time, place, and manner of the exam and does not specify the procedures or plan for the examination. Pl.'s Resp. to Defs.' Mot. for Exam at 6-7. However, Defendants agree to pay for the examination, detail that the examination will last approximately six hours at Dr. Burns's office in Atlanta, Georgia, the examination will be "akin to the neuropsychological evaluation that Plaintiff already underwent with [Dr. Emory]," and seek to confer with Plaintiff to identify a mutually agreeable date and time for the examination. Mot. for Exam at 11-12. The Court finds these terms reasonable and sufficiently specific and directs the parties to confer in good faith regarding a suitable date and time within the next sixty (60) days to conduct the examination.

## IV. CONCLUSION

It is hereby **ORDERED** that Defendant ViacomCBS, Inc.'s Supplemented and Refiled Motion for Summary Judgment [Doc. 108] is **GRANTED**. The Clerk is **DIRECTED** to terminate ViacomCBS, Inc. as a Defendant in this case.

It is further **ORDERED** that Defendant Kenneth Moldovan's Supplemented and Refiled Motion for Partial Summary Judgment [Doc. 108] is **GRANTED** as to Count IV of Plaintiff's Complaint. The sole remaining claims in this case are Counts I and V against Defendant Kenneth Moldovan.

It is further **ORDERED** that Defendants' Motion for Physical/Mental Examination by Physician [Doc. 117] is **GRANTED**.

It is further **ORDERED** that Plaintiff submit to a neuropsychological evaluation performed by Dr. Thomas G. Burns at his office within sixty (60) days of the date of this Order. The scope of the examination will be reasonably limited to investigating the cause, nature, and extent of Plaintiff's alleged injuries in this lawsuit and to ascertain Plaintiff's current physical condition and medical history.

The parties are **DIRECTED** to confer in good faith to arrive at an appropriate date and time for the examination and file proof of such scheduling within ten (10) days of the date of this Order.

**IT IS SO ORDERED** this 29th day of April, 2024.

Mark H. Cohen
MARK H. COHEN
United States District Judge